## SWEARINGEN *v.* UNITED STATES.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 567.   Submitted October 21, 1895. — Decided March 9, 1896.

The newspaper article, in the note on the opposite page, while its language is coarse, vulgar, and, as applied to an individual, libellous, was not of such a lewd, lascivious and obscene tendency, calculated to corrupt and debauch the minds and morals of those into whose hands it might fall, as to make it an offence to deposit it in the post office of the United States, to be conveyed by mail and delivered to the person to whom it was addressed.

IN the District Court of the United States for the District

of Kansas, November term, 1895, Dan K. Swearingen was indicted, under the provisions of section 3893 of the Revised Statutes, for depositing in the post office of the United States, at Burlington, Kansas, to be conveyed by mail and delivered to certain named persons a certain publication or newspaper, entitled " The Burlington Courier," dated September 21, 1894, and containing a certain article charged to be of an obscene, lewd, and lascivious character, and non-mailable matter.[1]

The indictment contained three counts, differing only in the names of the persons to whom copies of the newspapers

---

[1] That article is added by the reporter to the statement of the case, only omitting the names and substituting dashes. " About the meanest and most universally hated and detested thing in human shape that ever cursed this community is the red headed mental and physical bastard that flings filth under another man's name down on Neosho street. He has slandered and maligned every Populist in the State, from the governor down to the humblest voter. This black hearted coward is known to every decent man, woman, and child in the community as a liar, perjurer, and slanderer, who would sell a mother's honor with less hesitancy and for much less silver than Judas betrayed the Saviour, and who would pimp and fatten on a sister's shame with as much unction as a buzzard gluts in carrion. He is a contemptible scoundrel and political blackleg of the lowest cut. He is pretending to serve Democracy and is at the same time in the pay of the Republican party. He has been known as the companion of negro strumpets and has revelled in lowest debauches. He has criminally libelled and slandered such men as —— ——, —— ——, —— ——, —— ——, —— , and dozens of others whom we might name, who are recognized by all parties as among the oldest and most respected citizens of the county. His soul, if he has a soul, is blacker than the blackest shades of hell. He is the embodiment of treachery, cowardice, and dishonor, and hasn't the physical nor moral courage to deny it. He stands to-day hated, despised, and detested as all that is low, mean, debased, and despicable. We propose to have done with the knave. We have already devoted too much valuable space to him. Time and again has he been proven a wilful, malicious, and cowardly liar, and instead of subsiding he has redoubled his lies. He lies faster than ten men could refute ; and for what ? A little Republican slush-money ! He is lower, meaner, filthier, rottener than the rottenest strumpet that prowls the streets by night. Again we say, we are done with him. The sooner Populists and Populist newspapers snub him, quit him cold, ignore him entirely, the sooner will he cease to be thought of only as a pimp that any man can buy for $1 or less. He is too little and rotten to merit the notice of men. We have been wrong in noticing the poltroon at all, and henceforth are done."

were addressed. In each count the article was charged to be of an obscene, lewd and lascivious nature. The defendant moved to quash the indictment because the same did not state or charge a public offence, and because there were several offences improperly joined in each count. This motion was overruled. The defendant pleaded not guilty; a trial was had; and a verdict of guilty was rendered. Thereupon the defendant filed a motion in arrest of judgment and for a new trial. These motions were overruled, and the defendant was sentenced to be imprisoned at hard labor in the penitentiary for the period of one year, to pay a fine of $50, and to pay the costs of prosecution. Thereupon a writ of error was sued out to this court.

*Mr. J. D. McCleverty* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

The record discloses that the defendant below was, in the month of September, 1894, the editor and publisher of a newspaper called "The Burlington Courier," and was indicted for having mailed several copies of the paper, containing the article referred to in the previous statement, addressed to different persons.

The bill of exceptions shows that, at the trial, the government offered the article in question in evidence, and that the defendant objected for the reasons that no public offence was stated in the indictment, that there was a misjoinder of offences, and that the words of said newspaper article did not constitute unmailable matter. These objections were overruled, and an exception was allowed. The article was then read to the jury, and evidence was offered and received tending to show that on September 21, 1894, copies of the newspaper containing the said article were mailed by employés of the defendant, addressed severally to Riggs, Cowgill and

Lane, who were regular subscribers to the paper, and whose names were on the mail list. The defendant, on the ground of its insufficiency, moved to strike out the evidence as to the mailing of any paper to Lane or Cowgill. This motion was overruled, as was likewise a motion to compel the district attorney to elect upon which count of the indictment he would rely. The defendant offered no evidence, and the court charged the jury that the newspaper article in evidence, which the defendant admitted he published, was obscene and unmailable matter, and that the only thing for the jury to pass upon was whether the evidence satisfied them, beyond a reasonable doubt, that the defendant deposited, or caused to be deposited, in the post office at Burlington, Kansas, newspapers containing said article. To the rulings of the court overruling the motions and to the charge exceptions were taken and allowed.

As we think that the court erred in charging the jury that the newspaper article in question was obscene and unmailable matter, it will not be necessary for us to consider the merits of those assignments which allege error in the admission of evidence.

This prosecution was brought under section 3893 of the Revised Statutes, which declares that " every obscene, lewd or lascivious book, pamphlet, picture, paper, writing or other publication of an indecent character . . . are hereby declared to be non-mailable matter, and shall not be conveyed in the mails, nor delivered from any post office, nor by any letter carrier; and any person who shall knowingly deposit or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter, and any person who shall knowingly take the same or cause the same to be taken from the mails for the purpose of circulating or disposing of or aiding in the circulation or disposition of the same, shall be deemed guilty of a misdemeanor, and shall, for each and every offence, be fined not less than one hundred dollars nor more than five thousand dollars, or be imprisoned at hard labor not less than one year nor more than ten years, or both, at the discretion of the court."

The indictment contained three counts, in each of which the offence charged was the mailing of a copy of a newspaper containing the article referred to in the previous statement, and which was alleged to be "an obscene, lewd and lascivious article."

As already stated, the court charged the jury that the newspaper article was obscene and unmailable matter, and that the only question for the jury to pass upon was whether the defendant deposited the same in the post office at Burlington, Kansas.

The language of the statute is that "every obscene, lewd *or* lascivious book or paper" is unmailable, from which it might be inferred that each of those epithets pointed out a distinct offence. But the indictment alleges that the newspaper article in question was obscene, lewd *and* lascivious. If each adjective in the statute described a distinct offence, then these counts would be bad for duplicity, and the defendant's motion in arrest of judgment for that reason ought to have been sustained. We, however, prefer to regard the words "obscene, lewd or lascivious," used in the statute, as describing one and the same offence. That was evidently the view of the pleader and of the court below, and we think this is an admissible construction.

Regarding the indictment as charging, in each count, a single distinctive offence, to wit, the mailing of an obscene, lewd and lascivious paper, we think the court below erred in charging the jury that the evidence, so far as the character of the paper was concerned, sustained the charge, and that the only duty of the jury was to find whether the defendant knowingly deposited or caused to be deposited in the post office newspapers containing the article so described.

Assuming that it was within the province of the judge to determine whether the publication in question was obscene, lewd and lascivious, within the meaning of the statute, we do not agree with the court below in thinking that the language and tenor of this newspaper article brought it within such meaning. The offence aimed at, in that portion of the statute we are now considering, was the use of the mails to circu-

late or deliver matter to corrupt the morals of the people. The words "obscene," "lewd" and "lascivious," as used in the statute, signify that form of immorality which has relation to sexual impurity, and have the same meaning as is given them at common law in prosecutions for obscene libel. As the statute is highly penal, it should not be held to embrace language unless it is fairly within its letter and spirit.

Referring to this newspaper article, as found in the record, it is undeniable that its language is exceedingly coarse and vulgar, and, as applied to an individual person, plainly libellous. But we cannot perceive in it anything of a lewd, lascivious and obscene tendency, calculated to corrupt and debauch the mind and morals of those into whose hands it might fall.

*The judgment of the court below is reversed and the cause remanded with instructions to set aside the verdict and award a new trial.*

JUSTICES HARLAN, GRAY, BROWN, and WHITE dissented.