**E. Parl WELCH, Plaintiff,**

v.

**David M. KENNEDY et al., Defendants.**

**Civ. A. No. 3066–67.**

United States District Court,
District of Columbia.

Dec. 9, 1970.

**946**

John W. Karr, Glenn R. Graves, Washington, D. C., for plaintiff.

Benjamin C. Flannagan, Atty., Dept. of Justice, Joseph Hannon, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a test case brought by a Quaker who for reasons of religious conscience desires to send a contribution to a Canadian organization for use in providing medical supplies for the relief of noncombatants in North and South Vietnam. His application for a license to send $2,000 to the Canadian Friends Service Committee was denied by defendants under authority of the Trading With the Enemy Act, 50 U.S.C. App. § 5 (b), and the funds represented by a later $25 check sent to the same organization were blocked pursuant to a Treasury Department directive issued to banks in the United States under authority of the same Act. Plaintiff challenges the constitutionality of the Trading With the Enemy Act, and alternatively claims that the Act does not authorize defendants to interdict his contribution. The matter is before the Court on the Government's motion to dismiss and cross-motions for summary judgment. The facts are clearly set forth in defendants' statement of material facts as to which there is no genuine issue.

Plaintiff sought to convene a three-judge court under 28 U.S.C. §§ 2282, 2284, to entertain his challenge to the constitutionality of the Act. This application was denied, for the constitutionality of the Trading With the Enemy Act has been repeatedly upheld in cases such as Sardino v. Federal Reserve Bank, 361 F.2d 106 (2d Cir. 1966), cert. denied, 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130; Teague v. Regional Commissioner of Customs, 404 F.2d 441 (2d Cir. 1968), cert. denied, 394 U.S. 977, 89 S.Ct. 1457, 22 L.Ed.2d 756; and Campbell v. Chase National Bank, 5 F. Supp. 156 (S.D.N.Y.1933), aff'd, Campbell v. Medalie, 71 F.2d 671, cert. denied, 293 U.S. 592, 55 S.Ct. 108, 79 L.Ed. 686.

The gist of plaintiff's argument is that Congress never intended to authorize defendants to regulate humanitarian medical relief to foreign nations, and that in any event Congress does not have the power to do so where the relief is motivated by religious conscience. In support of the first contention, plaintiff points to the language and the history of section 5(b), topics discussed extensively in the briefs of both parties. Section 5(b) provides in pertinent part:

§ 5(b) (1). During the time of war or during any other period of national emergency declared by the President, the President may, through an agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise

—

\*　\*　\*　\*　\*　\*

(B) \*　\*　\* prevent or prohibit, any \*　\*　\* use, transfer, withdrawal \*　\*　\* or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest, \*　\*　\*

Plaintiff argues that the words "property" and "interest" must be taken as evidencing a congressional intent to regulate only commercial transactions and not donations to international relief organizations. Such an interpretation would be inconsistent with the broad purpose of the Act, which was to give the President full power to conduct economic warfare against belligerent nations in time of war or national emer-

gency. See Sardino v. Federal Reserve Bank, *supra,* 361 F.2d at 112.

■ The history of administration under the Act evidences no understanding that contributions for the purchase of medical supplies are outside its terms, but rather reflects a flexible use of the delegated power to meet the exigencies of varying circumstances. The Treasury Department's decision of February 27, 1967, to license donations for war relief to North Vietnam only under certain conditions, was within the scope of the power delegated by the Act, and was neither arbitrary nor irrational. Under the conditions prevailing in the present conflict, as outlined in the statement of material facts, there is no way to ensure that supplies provided to North Vietnam will be used only for civilian relief. Their diversion to combat forces may free funds for military hardware—and this our Government may take all steps within its power to prevent.

■ It is clear that the restriction imposed upon plaintiff's contributions does not violate the First Amendment's guarantee of free exercise of religion. Assuming that plaintiff's attempt to contribute funds to the Canadian Friends Service Committee was an exercise of religious belief, the First Amendment claim is nevertheless insubstantial. In Teague v. Regional Commissioner of Customs, *supra,* the Treasury Department regulations issued pursuant to the Trading With the Enemy Act prohibited unlicensed payment for publications originating in China, North Korea, and North Vietnam. The Court of Appeals for the Second Circuit held:

It is true that the regulations result in some limitation on the availability of publications and films originating in China, North Korea, and North Vietnam. To the extent of this limitation the regulations impinge on first amendment freedoms. However, restricting the flow of information or ideas is not the purpose of the regulations. The restriction of first amendment freedoms is only incidental to the proper general purpose of the regulations: restricting the dollar flow to hostile nations.

404 F.2d 441, 445. The incidental interference with plaintiff's ability to act in accordance with his religious belief is, if anything, even less direct than was the restriction on the importation of printed materials involved in *Teague.* The Trading With the Enemy Act unquestionably serves a proper governmental purpose, and any incidental restriction on plaintiff's exercise of religion does not withdraw from Congress the power fully to carry out that purpose. See United States v. O'Brien, 391 U.S. 367, 376–377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

■ Plaintiff has also raised, by way of an affidavit submitted at oral argument, an issue of religious discrimination, asserting that while licenses have been denied for contributions to the Canadian Friends Service Committee, they have been granted to Catholic organizations and others engaged in sending medical supplies to North Vietnam. Exhibits submitted by plaintiff and by the Government indicate, however, that contributions to organizations engaged in worldwide relief which are not designated for use in providing supplies to North Vietnam do not run afoul of the licensing policies. There is no evidence that funds earmarked or intended solely for relief to North Vietnam, as was plaintiff's, have been licensed for any organization whatsoever. Thus this argument based on the Establishment Clause is unsupported in the record.

■ One final contention by plaintiff needs little discussion. It is that the national emergency proclaimed by President Truman on December 16, 1950, has become "stale" and hence is no longer effective as a basis for invoking the provisions of the Trading With the Enemy Act. The emergency declaration has been reaffirmed by three Presidents, most recently in 1968; and the argument that it is "stale" has been rejected twice by the Court of Appeals

for the Second Circuit in *Sardino, supra,* and *Teague, supra.* If such emergency as currently exists does not warrant exercise of the powers granted by Congress in the Trading With the Enemy Act, it is for Congress to speak.

Plaintiff's motion for summary judgment is denied, and summary judgment will be entered for defendants. A simple order to this effect may be submitted.